## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RICHARD MACLENNAN,       :
                                :
          Plaintiff,       :
                                :
v.                            :     NO. 3:07CV1213 (MRK)
                                :
PROVIDENT LIFE & ACCIDENT     :
INSURANCE COMPANY and       :
UNUMPROVIDENT CORPORATION,  :
                                :
          Defendants.     :

## MEMORANDUM OF DECISION

This case arises out of Defendant Provident Life & Accident Insurance Company's[1] denial of Plaintiff Richard MacLennan's claim for long-term disability benefits.  Mr. MacLennan believes that his claim was wrongly denied in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*.  He also brings state-law claims for breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a *et seq*., as a result of Provident's alleged violation of a Regulatory Settlement Agreement (RSA) between Provident and state and federal insurance regulators.

Currently pending before the Court are Defendants' Motion for Summary Judgment [doc. # 59] and Plaintiff's Renewed Motion to Compel [doc. # 58].  These motions raise important questions regarding whether equitable tolling or futility will excuse Mr. MacLennan's failure to pursue an administrative appeal of the denial of his long-term disability claim in a timely manner,

---

[1] Defendants will be referred to collectively as "Provident."

1

and also whether the RSA provides Mr. MacLennan with an alternative means of achieving a *de novo* reassessment of his claim. With the consent of the parties, the Court held an evidentiary hearing on Mr. MacLennan's equitable tolling claim on October 28, 2009, and held oral argument on November 24, 2009.  Having carefully considered the parties' briefs and arguments, as supplemented by the evidentiary hearing, the Court grants judgment for Provident on Mr. MacLennan's ERISA claim but denies Provident's request for judgment on Mr. MacLennan's state-law claims under the RSA.[2]  The Court denies as moot Mr. MacLennan's Renewed Motion to Compel [doc. # 58].

## I.

The facts and procedural history of this case are almost entirely undisputed.  The Court recites the facts here only briefly and will discuss the facts further as needed in the discussion portions of this opinion.  Mr. MacLennan was dismissed from his position as a Senior Vice President with Solomon Smith Barney (SSB) in early 2002.  As a result of his termination and the surrounding circumstances, Mr. MacLennan fell into a deep depression.  In March 2002, he filed a claim for short- and long-term disability benefits under the ERISA plan provided by SSB, which was administered by Provident and CIGNA Life Insurance Company of New York ("CIGNA").  Despite representations from Mr. MacLennan's health care providers that his depression made him unable

---

[2] By holding the evidentiary hearing on October 28, the Court expanded the evidentiary record on equitable tolling.  The Court now grants Provident's Motion for Summary Judgment [doc. # 59] on Mr. MacLennan's ERISA claims – Counts One and Two of the Complaint [doc. # 1] – based on the parties' briefs at the summary judgment stage, and grants judgment to Provident on those same claims with respect to Mr. MacLennan's equitable tolling argument based on the record as supplemented by the evidence presented at the October 28 evidentiary hearing.

to work, Provident and CIGNA denied Plaintiff's claim for long-term benefits.[3]  On October 4, 2002, Provident sent Mr. MacLennan a letter informing him of the denial of his claim for long-term disability benefits and advising him that he could file an administrative appeal within 180 days – by April 2, 2003, to be precise.  Mr. MacLennan did not file an appeal within this deadline.

In November 2004 Provident entered into the RSA.  *See* Regulatory Settlement Agreement, *available at* http://forms.unum.com/StreamPDF.aspx?strURL=/FMS_043024-1.pdf (last visited Dec. 15, 2009) (hereinafter "RSA").  As part of its obligations under that agreement, Provident was required to give certain beneficiaries whose claims had been previously denied the opportunity to have those claims reassessed *de novo*.  Mr. MacLennan was one such beneficiary, and it is undisputed that he opted into the RSA process in March 2005.  At oral argument it became clear that neither party is sure of the exact date on which Mr. MacLennan opted into the RSA process, or even how he did so.  Nevertheless, the parties agree that the opt-in occurred, and a letter from Provident to Mr. MacLennan, dated March 21, 2005, acknowledges his decision to opt into the RSA process and confirms Mr. MacLennan's decision to participate in the RSA claims review process.  *See* Mem. of Law. in Supp. of Def. Mot. for Summ. J. [doc. # 60] ("Def. Mem.") Ex. E.

As part of the RSA process, Provident sent Mr. MacLennan a Reassessment Information Form (RIF) on December 16, 2005, which asked for additional information in order to help Provident complete the reassessment.  According to the letter that accompanied the RIF, Mr. MacLennan was required to complete the RIF, or ask for an extension of time to do so, by February 24, 2006.  *See id.* Ex. H.  At that time, Mr. MacLennan was represented by counsel.  However, Mr.

---

[3] Mr. MacLennan's lawsuit against CIGNA has been resolved.  *See* Stipulation of Dismissal [doc. # 19], *MacLennan v. CIGNA Life Insurance Co. of New York*, 3:07cv1211 (PCD) (D. Conn. Dec. 11, 2007).

MacLennan also missed this deadline, but only barely.  On March 7, 2006, 11 days after the RIF was due, a new attorney representing Mr. MacLennan sent a letter to Provident requesting an extension of time until March 30, 2006 to complete the RIF.  Provident denied this request on the ground that it was untimely, and therefore refused to reassess Mr. MacLennan's claim under the RSA process. *See id*. Ex. J.

On May 26, 2006, after Mr. MacLennan's request for a reassessment was denied and more than three years after the deadline to appeal the initial denial of long-term disability benefits had passed, Mr. MacLennan sent a letter to Provident appealing the denial.  Not surprisingly, Provident denied Mr. MacLennan's appeal as untimely.  On August 8, 2007, Mr. MacLennan filed this lawsuit.

## II.

The summary judgment standard is a familiar one.  Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ*., 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve

4

all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at

255; *Holcomb v. Iona Coll*., 521 F.3d 130, 137 (2d Cir. 2008).  If the moving party carries its burden,

the party opposing summary judgment "may not rely merely on allegations or denials." Fed. R. Civ.

P. 56(e)(2).  Rather, the opposing party must "set out specific facts showing a genuine issue for trial."

*Id*.  In short, the nonmoving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586

(1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Here, the parties agreed that the Court should supplement the summary judgment record with

further facts regarding Mr. MacLennan's assertion of equitable tolling.  *See Chapman v. ChoiceCare

Long Island Term Disability Plan*, 288 F.3d 506, 514 (2d Cir. 2002) (*Chapman I* ) ("[W]e think the

proof proffered by claimant's counsel is sufficient to warrant an evidentiary hearing on the question

of whether plaintiff's mental illness impaired counsel's efforts to file a timely request for review.").

Therefore, the Court moved beyond the summary judgment filings as they relate to equitable tolling,

and is prepared to render judgment on that issue on the basis of the summary judgment record as

supplemented by the evidence submitted at the evidentiary hearing.  *See* Fed. R. Civ. P. 52.

### III.

Provident's arguments in this case are based entirely on missed deadlines, while Mr.

MacLennan's arguments are based entirely on why he should be excused from those same deadlines.

Specifically, Provident argues that since Mr. MacLennan failed to timely appeal the denial of his

claim for benefits, he failed to exhaust his administrative remedies as required by ERISA.  *See* Def.

Mem. [doc. # 60] at 5-9.  Provident also argues that Mr. MacLennan has no claims under the RSA

because he missed that deadline as well.  *See id*. at 9-11.

Mr. MacLennan does not dispute that he missed the plan's deadline for appeal, but he argues that his failure should be excused under the doctrine of equitable tolling because he suffered from a mental illness that prevented him from filing a timely appeal.  *See* Pl. Mem. of Law in Opp. to Summ. J. [doc. # 65] ("Pl. Resp.") at 12-15.  Mr. MacLennan also contends that his failure to exhaust administrative remedies should be excused under the doctrine of futility because Provident's internal processes at the time it considered his claim were skewed in favor of denial.  *See id*. at 15-21. Finally, Mr. MacLennan argues that Provident was obligated to reassess his claim under the RSA despite his failure to adhere to the deadline for submitting his RIF.  *See id*. at 21-25.  The Court will address each argument in turn.

## IV.

It is well-established in the Second Circuit that, before bringing a claim under ERISA, a plaintiff must exhaust his administrative remedies.  *See Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993).  "[C]laimants must pursue all administrative remedies provided by their plan pursuant to statute, which includes carrier review in the event benefits are denied."  *Chapman I*, 288 F.3d at 511.

Nonetheless, Mr. MacLennan argues that his failure to appeal the denial of benefits in this case should be excused on the grounds of equitable tolling.  Although Mr. MacLennan did not appeal the denial of benefits until May 26, 2006, at the evidentiary hearing and oral argument his counsel conceded that he could not establish equitable tolling beyond March 21, 2005, when Mr. MacLennan, then represented by an attorney, sent a detailed letter to Provident requesting certain materials regarding his denied claim.  *See* Pl. Resp. [doc. # 65] Ex. L.  According to Mr. MacLennan,

6

he does not need to establish equitable tolling after March 21, 2005 because the letter sent to Provident on that date was in fact an appeal of the original denial, and was treated as such by Provident; and because the initiation of the RSA process tolled any ERISA administrative deadlines.

The Second Circuit has repeatedly declined to decide definitively whether the doctrine of equitable tolling applies to time limits specified in ERISA plan provisions, although the court has certainly left the door open to such arguments.[4]  *See Chapman I*, 288 F.3d at 512-14 (declining to decide the question because it could become moot on remand, but stating that "if the district court reaches the equitable tolling argument, we think the proof proffered by claimant's counsel is sufficient to warrant an evidentiary hearing on the question of whether plaintiff's mental illness impaired counsel's efforts to file a timely request for review"); *Garcia Ramos v. 1199 Health Care Employees Pension Fund*, 413 F.3d 234, 238 (2d Cir. 2005) (assuming, without deciding, that equitable tolling applies to ERISA plan time limits).  Nevertheless, district courts in the Second Circuit have applied the doctrine of equitable tolling to ERISA cases.  *See Chapman v. ChoiceCare Long Island Term Disability Plan* (*Chapman II*), No. 98-CV-4475 (DRH)(MLO), 2004 U.S. Dist. LEXIS 26546, at *11-*12 (E.D.N.Y. May 28, 2004); *Tiger v. AT&T Techs. Plan for Employees' Pensions, Disability Benefits*, 633 F. Supp. 532, 534 (E.D.N.Y. 1986).  The Second Circuit has also held that equitable tolling is available in other contexts involving time limits and administrative exhaustion.  *See Chapman II*, 2004 U.S. Dist. LEXIS 26546, at *11-*12 (listing contexts in which the Second Circuit has applied equitable tolling).

This Court need not decide whether an equitable tolling argument is available to Mr.

---

[4] The Second Circuit is not alone in declining to decide this question.  *See, e.g.*, *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226-27 (4th Cir. 2005); *Hunter v. Lockheed Martin Corp.*, 73 Fed. Appx. 968, 970 (9th Cir. 2003).

MacLennan, because even assuming (without deciding) that it is, Mr. MacLennan has not satisfied his substantial burden to show that he is in fact entitled to equitable tolling. "[T]he question of whether a person is sufficiently mentally disabled to justify tolling of a limitation period is, under the law of this Circuit, highly case-specific." *Boos v. Runyon*, 201 F.3d 178, 184 (2d Cir. 2000). The burden is on the plaintiff to demonstrate the appropriateness of equitable tolling. *Id*. at 185. To merit equitable tolling, "a plaintiff must have acted with reasonable diligence during the time period she seeks to have tolled." *Chapman I*, 288 F.3d at 512. In other words, to merit equitable tolling, Mr. MacLennan would have to show that he acted with reasonable diligence for that entire two-year period – in other words, that he was so incapacitated for two years that he was unable to appeal the denial of benefits. *See id*. Furthermore, a plaintiff seeking equitable tolling must offer more than "conclusory and vague claim[s], without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights . . . ." *Boos*, 201 F.3d at 185.

For example, in *Chapman I* and *Chapman II*, the Second Circuit and the District Court found that the plaintiff had satisfied her burden by submitting evidence showing that she suffered from severe mental impairment, suicide attempts, hospitalizations, and abuse of prescription drugs throughout the time period that she sought to have tolled. The relevant period was ten days in *Chapman I*, *see* 288 F.3d at 508, and seven months in *Chapman II*, *see* 2004 U.S. Dist. LEXIS 26546, at *11[5] – both significantly shorter than the two-year period of time that Mr. MacLennan seeks to toll in this case.

---

[5] Although *Chapman I* and *Chapman II* are opinions at different procedural stages in the same case, the time periods at issue differ.

8

Based on the evidence submitted by Mr. MacLennan in opposition to Provident's Motion for Summary Judgment [doc. # 59], the Court concluded that Mr. MacLennan deserved an evidentiary hearing on the his equitable tolling defense. *See Chapman I*, 288 F.3d at 514; *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60-61 (2d Cir. 2002) (reversing the district court's grant of summary judgment for the defendant and remanding for an evidentiary hearing where the limited record before the district court suggested that plaintiff with a mental condition may have been entitled to equitable tolling of the 90-day statute of limitations for filing an employment discrimination claim after receipt of a right to sue letter from the EEOC); *Canales v. Sullivan*, 936 F.2d 755, 756 (2d Cir. 1991) (reversing the district court's dismissal of plaintiff's complaint and remanding for an evidentiary hearing where plaintiff's mental impairment may have entitled her to equitable tolling of the 60-day statute of limitations for disability benefits under Title XVI of the Social Security Act).  Therefore, with the agreement of the parties, the Court held an evidentiary hearing specifically on equitable tolling on October 28, 2009.  At the hearing, the Court heard the testimony of Mr. MacLennan, as well as Dr. Stuart Grassian, who conducted a forensic investigation of Mr. MacLennan's condition, and Mr. Allan McLeod, Mr. MacLennan's treating psychotherapist.

Mr. MacLennan, Dr. Grassian, and Mr. McLeod all testified eloquently about the anguish that Mr. MacLennan suffered as a result of losing his job at SSB.  The Court is sympathetic to Mr. MacLennan, and does not in any way wish to minimize the deep depression that Mr. MacLennan experienced.  But a plaintiff seeking equitable tolling faces a daunting burden – one which Mr. MacLennan has not met.

As an initial matter, the Court is skeptical that Mr. MacLennan would even be entitled to equitable tolling from April 2, 2003 until March 21, 2005.  As previously mentioned, two years is

9

significantly longer than the period of tolling in *Chapman I*, *Chapman II*, or any other case in this Circuit of which the Court is aware.  Furthermore, at the evidentiary hearing, it became clear that Mr. MacLennan's condition began to improve by late 2004.  Specifically, he reduced his treatments with Mr. McLeod from weekly to twice per month in July 2004, and with the assistance of counsel he had found, Mr. MacLennan applied for Social Security benefits later that year.  Mr. MacLennan also always had the ability to contact the lawyer who had represented him in connection with his termination from SSB, and in fact, he ultimately did so in 2005.

The Court is not suggesting that Mr. MacLennan was no longer suffering from depression in 2004.  To the contrary, he was.  Furthermore, the Court is sensitive to Dr. Grassian's and Mr. McLeod's testimony that dealing with anything that reminded Mr. MacLennan of his experience with SSB, including appealing the denial of long-term disability benefits, would have been particularly painful for Mr. MacLennan.  But Mr. MacLennan's condition in 2004 does not seem to rise to the level of incapacity required to justify equitable tolling.

In the end, however, the Court does not need to decide whether equitable tolling applies to the period up to March 21, 2005, because the letter from Mr. MacLennan's former counsel to Provident on that date was not an appeal, and the RSA process did not toll any administrative deadlines relevant to ERISA.  First, there is no evidence that Mr. MacLennan's counsel's letter to Provident on March 21, 2005 was intended as an appeal of the denial of benefits.  The letter simply asks Provident to provide Mr. MacLennan's attorney with a long list of documents and materials, and says:

> [T]hese materials are requested so that Mr. MacLennan can monitor, evaluate and review Unum's handling and investigation of his claim.  They are also requested so that Mr. MacLennan can determine whether Unum's undisclosed policies and

> practices are consistent with his interests as a plan beneficiary, and *whether he should take steps to protect his rights*.

*See* Pl. Resp. [doc. # 65] Ex. L at 12 (emphasis added).  Nowhere does the letter suggest that Mr. MacLennan is seeking an appeal.  Mr. MacLennan's argument that Provident *treated* the letter as an appeal is also of no moment.  This assertion seems to be based only on Mr. MacLennan's claim that the letter was forwarded to Provident's appeals unit.  But even if this claim is true – and there is no evidence to support it – Provident took no action on the letter that would suggest that they understood it to be an appeal.  In fact, Provident's responses to the letter refer only to the RSA, and not to an appeal separate from the RSA process.  *See* Pl. Resp. [doc. # 65] Ex. M; Def. Mem. [doc. # 60] Ex. G.  In contrast, when Mr. MacLennan did appeal the original denial, Provident clearly treated it as such and rejected it as untimely.  *See* Def. Mem. [doc. # 60] Ex. C.

Second, Mr. MacLennan's argument that the RSA process tolled the appeal deadline is explicitly contravened by the language of the RSA, which states:

> Neither this Agreement nor any of the relief to be offered under this Agreement shall be interpreted to alter in any way the contractual terms of any policy, or to constitute a novation of any policy. Neither this Agreement nor any relief to be offered under this Agreement shall be interpreted to reduce or increase any rights of participants in ERISA-covered plans, including but not limited to rights to which they may be entitled pursuant to ERISA 29 U.S.C. 1133, and 29 C.F.R. 2560.503-1, including any appeal or review rights under the plan. Other than those rights afforded under this Agreement, no additional rights are provided to the extent that any Specified Claimants or Requesting Claimants have previously exercised their rights as mentioned in this paragraph 13 (or have failed to exercise their rights and therefore, as provided for under ERISA, have permitted those rights to lapse).

RSA ¶ C.13.  Simply put, the RSA does not change the terms of any ERISA plan – the RSA is an entirely separate contractual process that had no effect on Mr. MacLennan's rights, responsibilities,

and remedies under ERISA.[6]  The RSA did not toll the administrative deadlines of Mr. MacLennan's

ERISA plan.  Other district courts that have considered the impact of the RSA on ERISA deadlines

have reached the same conclusion.  *See Forrest v. The Paul Revere Life Ins. Co.*, __ F. Supp. 2d __,

2009 WL 3287314 (D. Mass. July 31, 2009); *Sadowksi v. Unum Life Ins. Co. of Am.*, No. 08-0980,

2008 WL 3307142 (E.D. Pa. Aug. 11, 2008); *Ayoub v. Unum Life Ins. Co. of Am.*, No. 06-CV-

15768-DT, 2007 WL 1059177 (E.D. Mich. Apr. 6, 2007).  Therefore, to excuse his failure to exhaust

administrative remedies, Mr. MacLennan would have to establish equitable tolling for the three-year

period from April 2, 2003 to May 28, 2006, which his counsel rightly admits he cannot do.  As such,

Mr. MacLennan's failure to exhaust administrative remedies cannot be excused based on equitable

tolling.

## V.

Even if Mr. MacLennan is not entitled to equitable tolling, his failure to exhaust

administrative remedies may still be excused if his administrative appeal would have been futile.

*See Kennedy*, 989 F.2d at 594.  Mr. MacLennan bases his futility argument on two allegations: (1)

that Provident's review of his claim was inadequate and violated its own internal standards; and (2)

that Provident was processing claims in bad faith.  *See* Pl. Resp. [doc. # 65] at 15-21.

The futility doctrine arises from the logic underlying the exhaustion requirement.

The primary purposes of the exhaustion requirement are to: (1) uphold Congress'
desire that ERISA trustees be responsible for their actions, not the federal courts; (2)
provide a sufficiently clear record of administrative action if litigation should ensue;
and (3) assure that any judicial review of fiduciary action (or inaction) is made under
the arbitrary and capricious standard, not *de novo*.

---

[6] In fact, this distinction between the RSA and ERISA is to Mr. MacLennan's benefit.
Were the RSA to change the terms of an ERISA plan, Mr. MacLennan's claims based on
Provident's alleged breach of the RSA might be preempted by ERISA.

*Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001) (quoting *Kennedy*, 989 F.2d at 594).  Thus, "futility would excuse an ERISA plaintiff's failure to exhaust only '[w]here claimants make a *clear and positive showing* that pursuing available administrative remedies would be futile.'" *Id*. (quoting *Kennedy*, 989 F.2d at 594).  In other words, "[t]he 'futility doctrine' is perhaps best understood as a term of art that considers whether, in light of both the claimant's and the plan administrator's actions, it is *fair* to require the dismissal of the claimant's suit . . . ." *Ludwig v. NYNEX Serv. Co.*, 838 F. Supp. 769, 781 (S.D.N.Y. 1993).

Courts considering claims of futility have routinely emphasized the need for the plaintiff to make a "clear and positive showing" of futility.

> A plaintiff invoking this doctrine has a heavy burden . . . .  It is not enough for the plaintiff to argue that a claim would have been denied. . . .  Instead, there must be a "clear and positive" indication of futility. . . .  For example, the plaintiff must show that it is certain that [his] claim will be denied on appeal, or that the plan made some affirmative failure that denied him full access to the administrative procedure.

*Cole v. Travelers Ins. Co.*, 208 F. Supp. 2d 248, 262 (D. Conn. 2002) (internal quotation marks and citations omitted).  Courts have been willing to find futility in cases where, for example, the defendant has failed to respond to a request for a review of the original determination, has failed to inform plaintiff of the appeals process, has acted in bad faith, or for other reasons that clearly indicate that an appeal would have been futile.  *See Skubel v. Fuoroli*, 113 F.3d 330, 334-35 (2d Cir. 1997) (finding futility where the decision was based on an interpretation of a regulation by the plan administrator, which the administrator indicated that he would not change absent a court order); *Ludwig*, 838 F. Supp. at 781-82 (collecting cases).  However, courts have refused to find futility where the claim was initially denied, and the plaintiff was informed of the reasons for the denial and the possibility of appeal.  *See Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, 517 F.

13

Supp. 2d 646, 651-53 (W.D.N.Y. 2007). Even a claim by a plaintiff that an initial review was inadequate or unreasonable is not enough to establish futility where an appeal would provide an "opportunity to identify those errors and seek administrative correction." *Saladin v. Prudential Ins. Co. of Am.*, No. 08-1512-cv, 2009 WL 2137346, at *2 (2d Cir. July 16, 2009) (summary order). In short, to invoke the futility doctrine a plaintiff must show that the denial of his administrative appeal is "a foregone conclusion." *Id*.

With these standards in mind, the Court turns to Mr. MacLennan's two arguments in support of his claim of futility. First, Mr. MacLennan's assertion that Provident's initial review was inadequate does not excuse his failure to appeal. Even if Provident's initial review was deficient, this alone does not establish futility. It is undisputed that Provident informed Mr. MacLennan of the basis for the denial, and notified him of the availability of an administrative appeal and the procedures for appealing Provident's decision. The appeal would have been *de novo*, and Mr. MacLennan would have been entitled to introduce additional evidence and complain of any deficiencies in the initial review. *See id*.

Mr. MacLennan's second argument – that Provident was processing claims in bad faith – presents a closer question. Mr. MacLennan relies on the circumstances surrounding the RSA to support this argument. There is certainly some truth to the allegation that Provident and its related companies engaged in improper behavior in reviewing claims, which is what led to the RSA itself. The Second Circuit has referenced this sorry history in other contexts. *See McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 137 (2d Cir. 2008) ("[W]e find First Unum's history of deception and abusive tactics to be additional evidence that it was influenced by its conflict of interest as both plan administrator and payor in denying McCauley's claim for benefits."); *see also Melczer v. Unum Life*

14

*Ins. Co. of Am.*, No. CV07-2560-PHX-MHM, 2009 WL 792502 (D. Ariz. Mar. 24, 2009).  Other

courts have also cited bad faith as supporting a finding of futility.  *See Riggs v. A.J. Ballard Tire &*

*Oil Co.*, 979 F.2d 848 (4th Cir. 1992) (finding futility based on bad faith evidenced by the defendants

failure to provide any requested information regarding the claim for benefits); *DePace v. Matsushita*

*Elec. Corp. of Am.*, 257 F. Supp. 2d 543, 560 (E.D.N.Y. 2003) (finding futility where plaintiffs

alleged that defendant "intentionally or recklessly made false statements to induce their participation

in the early retirement plan").

        However, none of the cases finding futility based on bad faith involves the type of

generalized allegations raised in this case – i.e., that Provident was a bad actor and therefore would

have denied the claim on appeal.  All have required some evidence of a particularized connection

between a defendant's bad faith and the denial of benefits, such that an appeal was almost

preordained to fail.  *See, e.g.*, *Melczer*, 2009 WL 792502, at *4 ("Based on Unum's well-documented

history of unfairly denying disability claims throughout the United States, *and based on its actual*

*denial of Mr. Melczer's claim during the reassessment process*, Mr. Melczer has provided sufficient

evidence to persuade this Court that his appeal would have been futile such that the exception to the

exhaustion requirement is applicable.") (emphasis added).  Mr. MacLennan presents no such

evidence in this case, and his counsel acknowledged at oral argument that Provident certainly

approved some disability claims, and that it was not impossible that Mr. MacLennan's appeal would

have succeeded.  Therefore Mr. MacLennan's generalized allegation of bad faith – even assuming

for purposes of this case that they are  true – does not amount to the kind of "clear and positive

showing" required under the futility doctrine.  To conclude otherwise – that is, to accept Mr.

MacLennan's argument based on Provident's bad faith, as evidenced by the RSA – would be to

excuse a failure to exhaust administrative remedies by any beneficiary whose claim was denied by any company who was a party to the RSA.

Because the Court rejects Mr. MacLennan's equitable tolling and futility arguments, the Court concludes that he failed to exhaust his administrative remedies.   Therefore, the Court renders judgment for Provident on Mr. MacLennan's ERISA claims – Counts One and Two of the Complaint [doc. # 1].

## VI.

Mr. MacLennan's other claims – Counts Three (breach of contract), Four (unjust enrichment), Five (breach of the covenant of good faith and fair dealing), and Six (a claim under CUTPA) – are all based not on ERISA, but on Provident's decision not to reassess Mr. MacLennan under the RSA, which he alleges is a breach of that agreement.  The Court concludes that Mr. MacLennan has raised material issues of disputed fact regarding these RSA-based claims, and therefore denies summary judgment on such claims.

The parties agree that the RSA is governed by Tennessee law.  *See* RSA ¶ C.1.  Tennessee, like many states, applies a notice-prejudice approach to insurance contracts.

> [O]nce it is determined that the insured has failed to provide timely notice in accordance with the insurance policy, it is presumed that the insurer has been prejudiced by the breach.  The insured, however, may rebut this presumption by proffering competent evidence that the insurer was not prejudiced by the insured's delay.

*Alcazar v. Hayes*, 982 S.W.2d 845, 856 (Tenn. 1998); *see also Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 818 (Tenn. 2000) (applying *Alcazar* to standard liability policies).

Admittedly, the RSA is not an ordinary insurance contract; nor is it even a contract between Provident and Mr. MacLennan.  But the Court has no trouble concluding that Mr. MacLennan is a

third-party beneficiary of the RSA, as the agreement exists in large part to benefit individuals in Mr. MacLennan's position.  *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68-69 (Tenn. 2001) ("Under the modern rule, third parties may enforce a contract if they are intended beneficiaries of the contract. . . .  If, on the other hand, the benefit flowing to the third party is not intended, but is merely incidental, the third party acquires no right to enforce the contract. . . .  In order to maintain an action as an intended beneficiary, a third party must show: (1) a valid contract made upon sufficient consideration between the principal parties and (2) the clear intent to have the contract operate for the benefit of a third party.") (internal quotation marks and citations omitted); *Jones v. Unum Life Ins. Co. of Am.*, No. 4:06CV00547 JLH, 2007 WL 1364686, at *4 (E.D. Ark. May 8, 2007) (analyzing an agreement involving Unum Life Insurance Company of America that is virtually identical to the RSA at issue in this case, and which arose from the same investigation, and concluding that the plaintiff was a third-party beneficiary of the RSA), *vacated pursuant to settlement*, 486 F. Supp. 2d 864 (E.D. Ark. 2007).  For the same reason, the Court believes that Tennessee's notice-prejudice standard is the appropriate lens through which to view the deadlines specified by the RSA.[7]  Notably, counsel for the parties did not suggest a different standard.

When conducting a notice-prejudice analysis under Tennessee law, prejudice is presumed but can be rebutted.  *See Alcazar*, 982 S.W.2d at 856.  In this case, Mr. MacLennan has successfully

---

[7] Even if notice-prejudice is not the appropriate standard, and the RSA was treated as an ordinary contract and not a contract of insurance, Provident would still be hard-pressed to prove that Mr. MacLennan's missing the deadline for submission of the RIF by 11 days was a material breach of the contract, such that Provident was excused from performance.  *See, e.g.*, *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, No. W2008-02350-COA-R3-CV, 2009 WL 3064898, at *13 (Tenn. Ct. App. Sept. 25, 2009).

rebutted the presumption of prejudice.  Provident makes several overlapping arguments as to why

the 11-day delay prevented it from reassessing Mr. MacLennan's claims, but none is availing.  First,

Provident argues that it was required by the RSA to adhere strictly to the 60-day deadline for

beneficiaries to return the RIF form.  *See* Aff. of Susan J. Griffin [doc. # 69-5] ¶¶ 9-10.  In essence,

Provident argues that it was prohibited from extending any deadline, and that if it had extended the

deadline for Mr. MacLennan, Provident would have had to extend it for others.

> The RSA does set out the reassessment process in some detail.  Specifically, it states:

> Claimant will also receive a Reassessment Information Form requesting information
> to support the reassessment of the claim in question.  All Reassessment Information
> Forms must be returned within 60 days of the date of [the] cover letter to the
> Reassessment Information Form, which will also be a date that is no earlier than the
> date the letter is posted in the mail, in order to be considered by the [Claim
> Reassessment Unit], unless the Confirmed Claimant requests in writing an extension
> and explains why such an extension is needed.

RSA Ex. 1 ¶ II.d.  The RSA also states that the companies subject to the RSA shall pay a $145

million fine "should the Lead Regulators upon examination determine that the claim reassessment

decisions were made in a manner inconsistent with the procedures of the Claim Reassessment Unit."

RSA ¶ D.6.

> Despite this language, it is difficult to imagine that the Lead Regulators would have fined

Provident for forgiving Mr. MacLennan, and other similarly situated beneficiaries, for missing the

RIF deadline by less than two weeks.  It is important to remember that the RSA was created for the

benefit of individuals like Mr. MacLennan.  As paragraph five of the Recitals states, the RSA was

intended to "provide an effective Claim Reassessment Process for an identified class of claimants

who seek review of the earlier decision . . . ."  RSA ¶ A.5.a.  Therefore, some flexibility when a

beneficiary changes counsel and seeks a modest extension would seem to be in the spirit of the RSA.

18

Provident may be correct that if it was flexible with the deadline for Mr. MacLennan it would have had to have been similarly flexible for other beneficiaries. But there is no evidence to suggest that there were many beneficiaries who missed the RIF deadline by such an inconsequential period of time; nor has Provident suggested how it would be prejudiced by showing flexibility.[8]

This line of reasoning is reinforced by a provision of the RSA that requires Provident to work with beneficiaries in the event that information submitted by a beneficiary is insufficient. *See* RSA ¶ B.3.c(ii) ("If a file is determined to lack specific information, Company personnel will work with claimant to obtain such information in accordance with appropriate procedures established for such purposes."). Thus, if Mr. MacLennan had requested an extension within the 60-day period and then later submitted his RIF with substantial gaps, Provident would have been required by the RSA to help Mr. MacLennan collect the missing information. Given this obligation, it is difficult to see how Provident can claim prejudice based on Mr. MacLennan's 11-day delay. This is particularly true since it was Provident who sought and obtained permission to delay completion of the RSA review process from December 31, 2006 to December 31, 2007. A brief *nunc pro tunc* extension in these circumstances could not possibly have prejudiced Provident.

Second, Provident argues that strict adherence to deadlines was necessary because it was required to complete the reassessment process by December 31, 2006. *See* RSA ¶ B.2.b.4. But there

---

[8] In a supplemental brief, Mr. MacLennan cites *Celio v. First Unum Life Ins. Co.*, No. CV 08-00545 DDP (AJWx), 2009 WL 2460785 (C.D. Cal. Aug. 6, 2009), as an example of a case where Provident was willing to extend the deadline for as much as a year. *See* Pl. Supplemental Mem. of Law in Opp. to Summ. J. [doc. # 79] at 3-4. However, *Celio* is not precisely on point, as it is not clear when First Unum requested plaintiff's RIF, nor whether she missed the deadline for submission at all. *See Celio*, 2009 WL 2460785, at *2. The only thing that is clear about *Celio* is that plaintiff submitted her RIF more than a year after she opted in to the RSA process. *See id.*

is no credible argument that Mr. MacLennan's tardiness of 11 days would have threatened that deadline. Indeed, counsel agreed to supplement Mr. MacLennan's filing by March 30, 2005; significantly, Provident's counsel conceded at oral argument that had Mr. MacLennan's counsel requested an extension by the deadline, he might well have received a longer time to supplement his application. Furthermore, the Lead Regulators ended up approving a one-year extension of the deadline, and the RSA process was not completed until December 2007. *See* Def. Supplemental Mem. in Supp. of Mot. for Summ. J. [doc. # 80] ("Def. Supplemental Mem.") at 4. Therefore, Provident had ample time to re-assess Mr. MacLennan's claim, even with the brief delay requested by his new counsel.

Provident also argues that Mr. MacLennan is not entitled to a reassessment of his claim because the RSA process is completed, and as a consequence, the Reassessment Unit has been disbanded. *See id.* at 5. But this argument is really about what relief Mr. MacLennan is entitled to if it is determined that Provident breached the RSA. That is an issue that the Court can address in the context of a trial – it is not a basis for summary judgment. Furthermore, the Court sees no reason why Provident could not conduct a *de novo* reassessment of Mr. MacLennan's claim now, without restarting all of the internal machinery associated with the RSA process.

Provident also suggests that Mr. MacLennan's RSA claims are somehow barred or preempted by his failure to exhaust his administrative remedies for his ERISA claim. *See id.* at 6-9. Provident relies on three district court cases for this argument: *Forrest*, 2009 WL 3287314; *Sadowksi*, 2008 WL 3307142; and *Ayoub*, 2007 WL 1059177. However, each of these cases is distinguishable from the case at hand. In *Forrest*, the issue was whether an ERISA statute of limitations was tolled by the RSA process – the plaintiff did not assert a claim for breach of the RSA. *See* 2009 WL 3287314,

at *8.  The same is true of *Sadwoski*, *see* 2008 WL 3307142, at *3, and *Ayoub*, *see* 2007 WL 1059177, at *4.  The Court already rejected a similar claim made by Mr. MacLennan on the grounds that the RSA does not impact his rights and remedies under ERISA.  But unlike the cases cited by Provident, Mr. MacLennan also brings *separate* state-law claims based on an alleged breach of the RSA itself.  Those claims do not implicate Mr. MacLennan's rights under ERISA, and are therefore not barred by the language of the RSA, nor are they preempted by ERISA.

Finally, at oral argument Provident's counsel suggested that Provident may have refused to grant Mr. MacLennan's request for an extension because Mr. MacLennan did not demonstrate good cause.  It is debatable whether this would have any impact on Mr. MacLennan's claims even if it were true.  But regardless, the reasoning provided by Provident in its letter declining to reassess Mr. MacLennan's claim is unequivocally based on his failure to submit the RIF, or the request for an extension, on time.  Provident makes no mention of good cause.  *See* Def. Mem. [doc. # 60] Ex. J.  Therefore, Provident cannot now assert a lack of good cause as the basis for its action.

## VII.

In sum, for all of the reasons discussed above, the Court denies Provident's Motion for Summary Judgment [doc. # 59] on Counts Three, Four, and Five of Mr. MacLennan's Complaint [doc. # 1].  The Court also denies summary judgment on Count Six, which alleges a CUTPA violation.  However, as mentioned to the parties at oral argument, the Court doubts that Mr. MacLennan can prevail on this Count, as a simple breach of contract, without more (and Mr. MacLennan does not plead more), does not violate CUTPA.  *See Lydall v. Ruschmeyer*, 282 Conn. 209, 248 (2007) (citing *Lawrence v. Richman Group Capital Corp.*, 358 F. Supp. 2d 29, 42 (D. Conn. 2005)).  The Court grants summary judgment on Counts One and Two, and also grants

21

judgment to Provident on Mr. MacLennan's equitable tolling argument.  Because the Court has granted judgment to Provident on Mr. MacLennan's ERISA claims, his Renewed Motion to Compel [doc. # 58] is denied as moot.

The Court will conduct a trial on Mr. MacLennan's breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing, and CUTPA claims, as well as the appropriate relief for such claims should Mr. MacLennan prevail.  However, the Court will provide counsel with an opportunity to assess the Court's decision and determine whether the parties desire a trial or whether, instead, Provident will provide Mr. MacLennan with a *de novo* reassessment of his long-term disability claim.  The Court will issue a separate order scheduling a telephonic conference to discuss next steps in this case.


IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: December 15, 2009.**